CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 20 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| JERRY VANCE, et al. ) | |
| Plaintiffs, ) | Civil Action No. 1:17-CV-00034-JPJ-PMS |
| v. ) | |
| ) | |
| WELLS FARGO BANK, N.A., et al ) | |
| Defendant. ) | By: Hon. Michael F. Urbanski |
| ) | Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiffs Jerry and Fran Vance (collectively, the "Vances") filed their complaint (the "Complaint" or "Compl."), ECF No. 1 Ex. A, against Wells Fargo Bank, N.A. ("Wells Fargo") alleging that Wells Fargo (1) violated Real Estate Settlement Procedures Act ("RESPA") regulations 12 C.F.R. §§ 1024.39 and 1024.41, and (2) breached the implied covenant of good faith and fair dealing under Virginia law. This matter is before the court on Wells Fargo's Motion to Dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 3. For the reasons discussed below, the court will **DENY** Wells Fargo's motion to dismiss the Vances' claim for a violation of 12 C.F.R. § 1024.39. But, the court will **DISMISS** the Vances' claims for violations of 12 C.F.R. § 1024.41 and breach of the duty of good faith and fair dealing without prejudice.

### I.

Wells Fargo moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

## II.

RESPA is "a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement costs, and to protect them from high settlement fees and the potentially abusive practices of providers." Augenstein v. Coldwell Banker Real Estate LLC, No. 2:10-CV-191, 2011 WL 3837096, at *2 (S.D. Ohio Aug. 30, 2011) (citing 12 U.S.C. § 2601(a)).

The Consumer Financial Protection Bureau ("Bureau") "is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes" of RESPA. 12 U.S.C. § 2617.

## A.

RESPA Section 1024.39 requires a service to "establish or make good faith efforts to establish live contact with a delinquent borrower not later than the 36th day of the borrower's delinquency and, promptly after establishing live contact, inform such borrower about the availability of loss mitigation options if appropriate." 12 C.F.R. § 1024.39(a). Nothing in Section 1024.39 explicitly confers a private right of action to a borrower. See generally id. But, as the Vances state, nothing "categorically removes or denies a private right of action." Pl.'s Mem. Law Opp. Def.'s Mot. Dismiss ("MTD Opp."), ECF No. 12, at 2. So, Section 1024.39 is silent as to whether it conveys a private right of action.

When courts must determine whether statutes or regulations convey private rights of action, a few general principles apply. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Further, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." Id. at 291. And, "[w]hen an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is plainly erroneous or inconsistent with the regulation.'" Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 613 (2013) (quoting Chase Bank USA, N. A. v. McCoy, 562 U.S. 195, 208 (2011)).

In Schmidt v. Pennymac Loan Servs., LLC, the court decided this very issue for another section of Regulation X. 106 F. Supp. 3d 859, 867 (E.D. Mich. 2015). In Schmidt, the plaintiff filed a claim against the defendant alleging a violation Regulation X's Section 1024.40 promulgated by the Bureau. The court turned to Section 1024.40's regulatory history to determine whether a private right of action existed. The court learned that in the proposal to

3

promulgate Section 1024.40, "the CFPB relied upon legislation that arguably would have channeled a statutory cause of action through regulation" by citing subsection 6(k)(1)(E) of RESPA. Id. at 870. But, the court stated, "[i]n its final ruling, the CFPB backed away from this implication and, in fact, denied that the regulation provided or channeled any private right of action." Id. Important to the court's analysis was the fact that the Bureau "dropped its reliance on RESPA section 6(k)(1)(E)." Id. at 871. After reviewing the regulatory history and the statutory authority the Bureau relied on to promulgate the final rule, the court concluded that Section 1024.40 did not "effectuate a privately enforceable statutory right." Id.

In this case, conducting the same type of analysis as the Schmidt court leads to the opposite conclusion for Section 1024.39. The Bureau initially "proposed to implement § 1024.39 pursuant to authority under sections 6(k)(1)(E), 6(j)(3), and 19(a) of RESPA . . . ." Mortgage Servicing Rules Under the Real Estate Settlement Act (Regulation X), 78 Fed. Reg. 10696, 10790 (Consumer Fin. Prot. Bureau Feb. 14, 2013) (to be codified at 12 C.F.R pt. 1024). The Bureau made this proposal during 12 C.F.R. § 1024's notice and comment period with the knowledge that "[v]iolations of section 6 of RESPA are subject to a private right of action." Id. During the notice and comment period, "[i]ndustry commenters, including . . . several large bank servicers[,] were concerned that a private right of action would result in uncertainty for servicers and could delay loss mitigation efforts and the foreclosure process . . . ." Id. The "commenters requested that the Bureau issue the early intervention [that is, Section 1024.39] . . . solely in reliance on RESPA section 19(a) authority." Id. Nonetheless, after considering the industry comments, the Bureau adopted "§ 1024.39 pursuant to its authorities under sections 6(j)(3), 6(k)(1)(E), and 19(a) of RESPA." Id. at 10790–91.

4

Congress granted the Bureau explicit authority to create regulations under any RESPA section. 12 U.S.C. § 2617. RESPA Section 6(j)(3) grants the Bureau authority to "establish any requirements necessary to carry out this section." Id. § 2605(j)(3). And, RESPA Section 6(k)(1)(E) provides that a "servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau . . . by regulation, to be appropriate to carry out the consumer protection purposes of this Act." Id. § 2605(k)(1)(E). The Bureau thoroughly considered its options when deciding which RESPA sections to rely on when promulgating Section 1024.39. In the final version of Section 1024.39, the Bureau explicitly relied on RESPA Section 6 as the legal authority for promulgating the rule. The Bureau's choice to rely on RESPA Section 6 is not plainly erroneous or inconsistent with its own regulation or its explicit statutory authority. Thus, Section 1024.39 conveys a private right of action.

Wells Fargo cites Brown v. Bank of N.Y. Mellon for the proposition that "there is no private right of action for an alleged violation of . . . § 1024.39." Def.'s Mem. Supp. Mot. Dismiss, ECF No. 12, at 2. In Brown, the court concluded in one sentence "[w]ith respect to plaintiff's Regulation X claims . . . defendants correctly argue that 12 C.F.R. §§ 1024.35, 1024.39, and 1024.40 do not explicitly provide a cause of action to private individuals." No. 1:16-cv-194 (LMB/IDD), 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016). In reaching its conclusion, the court relied on Gresham v. Wells Fargo Bank, N.A., 642 F. App'x 355 (5th Cir. 2016), for the proposition that Section 1024.39 does not convey a private right of action. See id.

In Gresham, the plaintiff claimed that Wells Fargo violated the "early intervention" rule at 12 C.F.R. § 1024.39. 642 F. App'x at 359. The court stated that "[u]nlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers." Id. But, the court went on to say "[b]ecause [plaintiff] has failed to support his claim with any facts, we need

5

not reach the issue of whether a private right of action could be available under Section 1024.39." Id. at 359 n.16. So, the court did not analyze whether Section 1024.39 conveys a private right of action to borrowers. Therefore, Gresham cannot stand for proposition that Brown claims it does.

Because the Bureau promulgated Section 1024.39 under the authority of RESPA Section 6 and Section 6 confers a private right of action, Section 1024.39 authorizes a private right of action. Thus, Wells Fargo's Motion to Dismiss the Vances' Section 1024.39 violation claim will be denied.

### B.

"12 C.F.R. § 1024.41 sets forth requirements for the submission, consideration, and adoption or rejection of applications for mortgage relief." Trudell v. Carrington Mortg. Servs., L.L.C., No. 1:16-cv-10441-TLL-PTM, 2016 WL 6080822, at *6 (E.D. Mich. Sept. 27, 2016). The regulation explicitly states "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). Section 6(f) provides a private right of action to individuals for damages and costs incurred for failure to comply with any provision in the section. Id. § 2605(f).

Section 1024.41(c) states "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall" evaluate the borrower's loss mitigation options and notify the borrower, in writing, the options, if any, the servicer will offer the

borrower. Id. § 1024.41(c). So, the trigger for the Section 1024.41(c) evaluation and notification requirements is the servicer's receipt of a complete loss mitigation application.[1]

A "complete loss mitigation application" is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

In Gresham, the plaintiff claimed that "Wells Fargo violated the [Bureau] regulations with respect to 'dual tracking' at 12 C.F.R. § 1024.41." 642 F. App'x at 358–59. The court stated "Section 1024.41(g) only applies where 'a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale.'" Id. (quoting 12 C.F.R. § 1024.41(c)). The court then went on to say that the plaintiff "did not plead, nor is there any evidence, that he submitted a complete loss mitigation application more than 37 days before the . . . foreclosure sale." Id. Thus, the court concluded that the "district court . . . . correctly concluded that [plaintiff] failed to put forth any factual content to support its claim that Wells Fargo violated dual tracking rules." Id.

In this case, the complaint alleges that "HJTPC faxed Wells Fargo a loan modification package." Compl. ¶ 20. The Vances fail to allege that the "loan modification package" contained

---

[1] Section 1024.41(g) imposes limits on when a servicer may move forward on foreclosure sales. 12 C.F.R. § 1024.41(g). Like Section 1024.41(c), Section 1024.41(g) has a triggering condition: A borrower must submit a complete loss mitigation application. Id. So, to properly allege a Section 1024.41(g) violation, a plaintiff must, at a minimum, allege that he or she submitted a complete loss mitigation application. See Trudell, 2016 WL 6080822, at *6 ("Failure to submit a complete loss mitigation application is fatal to claims brought under 12 C.F.R. § 1024.41(g)."). If Regulation X requires plaintiffs to allege that they submitted a complete application to properly allege a Section 1024.41(g) violation, the same regulation must also require plaintiffs to state the same to properly allege a Section 1024.41(c) violation.

a complete loss mitigation application as defined in Section 1024.41(b)(1). In addition, the Vances fail to allege Wells Fargo actually received a complete loss mitigation application. Thus, like the plaintiffs in Gresham, the Vances fail to allege sufficient facts to support their claim that Wells Fargo violated Section 1024.41(c). The Vances' claim for a violation of Section 1024.41(c) will be dismissed without prejudice for failure to state a claim.

### III.

"Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." Jones v. Fulton Bank, N.A., No. 3:13-CV-126, 2013 WL 3788428, at *7 (E.D. Va. July 18, 2013) (emphasis omitted) (internal quotations omitted) (quoting Albayero v. Wells Fargo Bank, N.A., 3:11CV201-HEH, 2011 WL 4748341, at *6 (E.D. Va. Oct. 5, 2011)), aff'd, 565 F. App'x 251 (4th Cir. 2014). Put another way, "[a] breach of the implied duty of good faith and fair dealing must be raised in a claim for breach of contract, as opposed to a claim in tort." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 465 (E.D. Va. 2013) (citing Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996)).

In this case, the Vances claim Wells Fargo violated RESPA regulations and breached the implied covenant of good faith and fair dealing. Compl. ¶¶ 31–35. But, the Vances fail to allege that Wells Fargo breached a contract. The Vances attempt to allege a breach of the implied duty of good faith and fair dealing as its own cause of action. Thus, the Vances have not stated a claim upon which relief may be granted.

The Vances cite two cases for the proposition that a violation of the duty of good faith and fair dealing can be asserted as an independent action. MTD Opp. 3. In Stoney Glen, LLC v. Southern Bank & Trust Co., the court stated that the plaintiffs brought their "breach of implied

8

duty of good faith and fair dealing claim as part of their count for breach of contract." 944 F. Supp. 2d 460, 466 (E.D. Va. 2013). Only then did the court move on to determine whether the plaintiffs properly alleged a breach of the duty. Id.

In Virginia Vermiculite, Ltd. v. W.R. Grace & Co., the Fourth Circuit held that the "district court erred in dismissing appellants' state law claims" for a breach of the implied duty of good faith and fair dealing. 156 F.3d 535, 542 (4th Cir. 1998). But, the appellants' claims were tied to the appellee's alleged breach of "its contractual duty to exercise its discretion not to mine in good faith." Va. Vermiculite, Ltd. v. W.R. Grace & Co.- Conn., 965 F. Supp. 802, 831 (W.D. Va. 1997), rev'd on other grounds, 156 F.3d 535 (4th Cir. 1998). In this case too, the claim for a breach of the duty was part of a breach of contract claim. Therefore, both cases the Vances cite dealt with allegations in which the breach of the duty was tied to a breach of contract claim. Neither case is helpful to the Vances' argument.

## IV.

For the reasons stated above, the court will deny Wells Fargo's motion to dismiss the Vances' claim for a violation of Section 1024.39. But, the court will dismiss the Vances' claims for violations of Section 1024.41 and the breach of the duty of good faith and fair dealing without prejudice.

An appropriate Order will be entered.

Entered: 02-20-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge